**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**APRIL D. PHILLIPS**                                                                **PLAINTIFF**


**v.**                               **NO. 4:23-cv-00189-PSH**


**KILOLO KIJAKAZI, Acting Commissioner**                    **DEFENDANT**
**of the Social Security Administration**


## <u>MEMORANDUM OPINION AND ORDER</u>

In this case, plaintiff April D. Phillips ("Phillips") challenges the denial of her applications for disability insurance benefits and supplemental security income payments. Phillips does so on the ground that the findings of an Administrative Law Judge ("ALJ") are not supported by substantial evidence on the record as a whole.[1] Phillips maintains that her residual functional capacity was erroneously assessed because the assessment does not account for the limitations caused by her non-severe mental impairments. Because substantial evidence on the record as a whole supports the ALJ's findings, his decision is affirmed.

---

[1]    The question for the Court is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." See <u>Sloan v. Saul</u>, 933 F.3d 946, 949 (8th Cir. 2019).

Phillips was born on July 17, 1977, and was forty-two years old when she filed her applications. She initially alleged that she became disabled for purposes of the Social Security Act on January 1, 2018, but later amended that date to March 13, 2019.

In the ALJ's decision denying Phillips' applications, the ALJ summarized the evidence relevant to Phillips' mental impairments. See Transcript at 24-25, 32. Phillips, in turn, summarized that evidence as a part of her brief. See Docket Entry 11 at CM/ECF 1-4. There is no dispute as to the evidence relevant to her mental impairments, and the Court will not repeat either summary in full or otherwise recite the evidence in great detail. Instead, the Court notes the following evidence in order to place Phillips' assertion of error in the proper context.

Phillips' medical records reflect diagnoses of mental impairments since at least December of 2017. See, e.g., Transcript at 1131. Since that time, the impairments—characterized as an anxiety disorder and a depressive disorder—have been noted repeatedly. See, e.g., Transcript at 1083 (06/07/2019), 1017 (07/02/2019), 1002 (01/14/2020), 1028-1029 (05/13/2020), 996-997 (05/21/2020), 1469 (02/23/2021). She has sought medical attention for her symptoms and has been treated with anxiety medication.

For instance, on June 7, 2019, Phillips saw Dr. Ryan Buffalo, M.D. ("Buffalo") for complaints of depression and insomnia. See Transcript at 1082-1085. Phillips reported a depressed mood, fatigue, insomnia, irritability, and restlessness. A mental status evaluation was unremarkable. She was oriented to person, place, and time; had a normal mood and affect; normal behavior; and normal judgment and thought content. Buffalo prescribed paroxetine for anxiety and trazodone for sleep.

On July 2, 2019, or approximately one month later, Phillips saw Dr. Keith Schluterman, M.D., ("Schluterman") for complaints of what were described as blacking out spells. See Transcript at 1014-1019. Although Phillips was positive for anxiety and depression, a mental status evaluation was unremarkable as Schluterman noted the following:

> Oriented to person, place and time. Immediate, recent and remote memory is intact, the patient gives a concise and fact-filled history. Attention span and concentration is normal. Ability of patient to name objects, repeat phrases and speak spontaneously is within normal limits. Patient awareness of current events, past history and vocabulary is within normal limits.

See Transcript at 1017. Schluterman diagnosed, inter alia, "transient alternation of awareness," see Transcript at 1017, and a generalized anxiety disorder. Schluterman continued Phillips on medication.

In the months that followed, Phillips sought medical attention for a variety of complaints. Her mental status was evaluated during those presentations, and the findings and observations were consistently unremarkable. See, e.g., Transcript at 1075 (08/26/2019), 1009 (10/23/2019), 1072 (11/12/2019), 1069 (12/23/2019), 1066-1067 (01/02/2020), 751 (01/05/2020), 1003 (01/14/2020), 1047 (03/09/2020), 917 (04/29/2020). For instance, on July 23, 2019, or less than one month after Phillips saw Schluterman, Phillips saw Buffalo for complaints of palpitations. See Transcript at 1076-1078. Although Buffalo noted Phillips' history of anxiety, Buffalo observed that Phillips was oriented to person, place, and time; had a normal mood and affect; and had normal behavior, judgment, and thought content.

On May 13, 2020, Phillips saw Buffalo for complaints that included insomnia. See Transcript at 1028-1031. Phillips' symptoms included a depressed mood, excessive worry, malaise, nervous/anxious behavior, obsessions, panic, and restlessness. Her symptoms did not include such things as confusion, decreased concentration, hyperventilation, irritability, or suicidal ideas. Her symptoms were causing her significant distress and interfering with her daily activities. A mental status evaluation was largely unremarkable. Although Phillips had an anxious mood and

tearful affect, she otherwise had a normal appearance; was alert; and was oriented to person, place, and time. Her behavior was normal, her thought content was normal, and her judgment was normal. Buffalo performed a PHQ-9 depression screening and assessed a score of thirteen.[2] Buffalo found, <u>inter alia</u>, that Phillips had little interest or pleasure in doing things; felt down, depressed, or hopeless; had trouble sleeping; felt tired and had little energy; and had a poor appetite. Buffalo continued Phillips on medications for her anxiety and difficulties sleeping.

In the following months, Phillips continued to seek medical attention for a variety of complaints. Her mental status was evaluated during the presentations, and the findings and observations continued to be unremarkable. <u>See</u>, <u>e.g.</u>, Transcript at 1310-1311 (08/13/2020), 1307 (08/25/2020), 1305 (09/09/2020), 1302 (09/22/2020), 1420 (11/19/2020), 1413 (12/05/2020), 1470 (02/23/2021). Although her history of anxiety was repeatedly noted, as was her PHQ-9 score, she routinely had a normal mood and affect, normal thought content, and normal judgment.

---

[2]    "The PHQ-9 is the nine item depression scale of the Patient Health Questionnaire. The PHQ-9 is a tool for assisting primary care clinicians in diagnosing depression as well as selecting and monitoring treatment." <u>See</u> <u>Luckett v. Astrue</u>, No. 09-5211, 2011 WL 336250, 3 (W.D. Ark. Jan. 31, 2011). A score between ten and fourteen indicates moderate depression. <u>See</u> <u>Alia D. v. Kijakazi</u>, No. 21-cv-366-MJD-LIB, 2022 WL 3718600 (D. Minn. July 27, 2022), report and recommendation adopted, No. 21-cv-366-MJD, 2022 WL 3717186 (D. Minn. Aug. 29, 2022).

Phillips' medical records were reviewed by state agency medical consultants as a part of her applications for disability insurance benefits and supplemental security income payments. Dr. Rachel Morrisey, Ph.D., opined in November of 2020, and in March of 2021 Dr. Lauren Robinson, Psy.D., agreed, that Phillips has mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. See Transcript at 78-80, 112-114.

The record contains a summary of Phillips' work history. See Transcript at 259-268. The summary reflects that she has worked sporadically since approximately 1995. To the extent Phillips did work, the ALJ characterized the work as that of a school bus driver.

Phillips completed a series of reports as a part of her applications. In a function report, she represented, inter alia, that she can attend to most of her own personal care, prepare simple meals, and perform minor chores around the house. See Transcript at 295-302. She can pay her bills, count change, handle a savings account, and use a checkbook, but she sometimes forgets to perform those activities. She has no problem getting along with others, although her social activities are limited because she is unable to drive an automobile.

Phillips testified during the administrative hearing. <u>See</u> Transcript at 50-68. She was asked about her mental impairments, specifically, her anxiety and depression, and asked about the treatment she is receiving for them. She testified as follows:

> A. I take paroxetine every day for that. My anxiety, I basically just don't go anywhere unless I have to because it just agitates it more. I don't have anything emergent for that. That's just my daily medication that I take to help everything stay kind of calm.
>
> Q. Okay, are you involved in any counseling?
>
> A. No, sir.

<u>See</u> Transcript at 56. Phillips' greatest challenge is her migraine headaches. Her various physical impairments cause her a great deal of stress and anxiety, as she testified to the following:

> A. Emotionally is, the emotions are a very large part of my daily life because of my family would tell you that I'm not a strain but I feel like I am a strain on my family because someone has to stay with me at all times. I can't be left alone. They have to watch me all the time. I can't—without being able to work, it's putting more on me because I feel like I'm not taking care of my family and I can't enjoy going places. I stay home a lot. Just there's so much that I, that takes my dependence away, and I've always been a very independent person so to not be able to help and support my family is a huge, you know, slap in the face.

And then just the anxiety that comes from it when I do have to go places or the anxiety of it when things have to change, you know, the depression. I tend to cry a lot. Sometimes I have a problem getting out of bed for two or three days. It's just a constant up and down with my emotions and my family feels the same emotions.

Q. Okay. You mentioned your anxiety. Dr. Buffalo has discussed your anxiety with you. What did he say?

A. He told me that my anxiety and my depression, that it's due to the fact that I have lost all control over my life, and that not being able to be what I've always been just, I guess, accelerates both issues.

See Transcript at 59. Phillips spends most of a typical day either laying on the couch or in bed. Her headaches and insomnia give rise to difficulties with concentration, and she finds it hard to stay focused and on task. Changes in her routine make her very agitated. She gets aggravated being around too many people and, for that reason, she tends to isolate.

The ALJ found at step two of the sequential evaluation process that Phillips' severe impairments include migraine headaches, unspecified convulsions, vasospastic angina, NSTEMI in 2017, and hypertension. The ALJ found that Phillips' mental impairments are not severe impairments because they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." See Transcript at 24. The ALJ so found for the following reasons:

The first functional area is understanding, remembering, or applying information. In this area, the claimant has mild limitation. At the hearing, the claimant testified that she was a high school graduate, and attended some college (Hearing Testimony). In her "Function Report," the claimant stated that she was able to pay bills, count change, handle a savings account, and use a checkbook/money orders (Ex. 9E). The claimant has had normal mental status findings (Ex. 10F). She does not receive mental health treatment.

The next functional area is interacting with others. In this area, the claimant has mild limitation. At the hearing, the claimant testified that she does not go anywhere unless she has to. She takes Paroxetine for anxiety. She is not in counseling. Her anxiety increases around strangers. She isolates herself from others (Hearing Testimony). In her "Function Report," the claimant stated that she socialized with others in person, on the phone, in email, and video chatting. She went to gatherings about once a month. She got along well with authority figures (Ex. 9E). Despite the claimant's allegations of social anxiety, there is no evidence in the record of significant anxiety complaints and the claims received no specific mental health treatment. Mental status findings do not identify any significant anxiety (Ex. 10F).

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. At the hearing, the claimant testified that she had issues concentrating due to migraine headaches and fatigue. She did not complete tasks. She did not like change (Hearing Testimony). In her "Function Report," the claimant stated that she could pay attention for five minutes or so and did not finish what she started. Her mind wandered. She did not handle stress or change in routine well (Ex. 9E). There is no evidence in the record of significant concentration issues. In fact, mental status findings have been normal, and the claimant has not received any significant mental health treatment (Ex. 10F).

> The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. At the hearing, the claimant testified that she lived with her husband and four children, ages 21, 18, 18, and 17 (Hearing Testimony). In her "Function Report," the claimant stated that she was able to microwave meals. Her ability to perform household chores was limited due to headaches (Ex. 9E). While the claimant has some limitations in activities of daily living due to her physical impairments, there is no evidence of significant limitations associated with her mental impairments.

<u>See</u> Transcript at 25. The ALJ then assessed Phillips' residual functional capacity and found that she can perform a reduced range of light work. In making the assessment, the ALJ did not account for any limitations caused by Phillips' mental impairments. In declining to account for any such limitations, the ALJ noted that Phillips had numerous normal mental status examinations. The ALJ also found persuasive the medical opinions of the state agency medical consultants that Phillips' mental limitations are mild. The ALJ found at step four that Phillips is unable to perform her past relevant work. At step five, the ALJ found that there is other work Phillips can perform, specifically, work as a mail sorter or office helper.

Phillips advances one assertion of error. She maintains that her residual functional capacity was erroneously assessed because the assessment does not account for the limitations caused by her non-severe mental impairments.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite her limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, see Jones v. Astrue, 619 F.3d 963 (8th Cir. 2010), and all of the claimant's impairments—even her non-severe impairments—must be considered, see Igo v. Colvin, 839  F.3d 724 (8th Cir. 2016).

The question for the Court is whether substantial evidence on the record as a whole supports the ALJ's finding that Phillips' non-severe mental impairments do not adversely impact her residual functional capacity. For the reason that follows, the ALJ could find as he did, and substantial evidence on the record as a whole supports the ALJ's assessment of Phillips' residual functional capacity.

The Court cannot agree that the ALJ failed to consider Phillips' non-severe mental impairments in assessing her residual functional capacity. The ALJ considered the impairments but simply found that they did not adversely impact Phillips' residual functional capacity. The ALJ so found, in part, because Phillips had numerous normal mental status evaluations during the relevant period. The record supports that finding. See, e.g., Transcript at 1084, 1017, 1075, 1009, 1072, 1069, 1066-1067, 751, 1003,

1047,  917, 1077, 1031, 1310-1311, 1307, 1305, 1302, 1420, 1413, 1470. Additionally, the ALJ found persuasive the medical opinions of the state agency medical consultants that Phillips' mental limitations are mild. The record supports the ALJ's handling of the consultants' opinions as their opinions are, inter alia, consistent with the "numerous normal mental status findings in the record" and Phillips' lack of "mental health treatment." See Transcript at 32.

Phillips faults the ALJ for failing to account for the limitations Phillips has in the area of concentrating, persisting, or maintaining pace. Phillips supports her assertion by citing neurological treatment notes during her presentations for what were described as blacking out spells. The notes reflect that she was diagnosed with "[t]ransient alteration of awareness." See Transcript at 1017. As the Commissioner of the Social Security Administration ("Commissioner") correctly notes, though, her transient alteration of awareness was not related to her mental impairments. Instead, her transient alteration of awareness was "likely [a] complicated type of migraine[]." See Transcript at 1004.[3]

---

[3]     Phillips also appears to maintain that the ALJ's hypothetical question to a vocational expert was flawed because the question did not include a limitation for the hypothetical individual's mental impairments. See Docket Entry 11 at CM/ECF 9. Phillips' two sentence assertion of error is without merit as substantial evidence on the record as a whole supports the ALJ's findings that Phillips' mental limitations are mild.

"It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the [ALJ's] decision if that decision is supported by good reason and is based on substantial evidence." See Dillon v. Colvin, 210 F.Supp.3d 1198, 1201 (D.S.D. 2016). In fact, the Court may not reverse the ALJ's decision merely because substantial evidence would have supported an opposite decision. See Id. Here, the ALJ could find as he did as his findings are supported by substantial evidence on the record as a whole.

For these reasons, the Court finds that the ALJ's findings are supported by substantial evidence on the record as a whole. Phillips' complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 13th day of December, 2023.

_____
UNITED STATES MAGISTRATE JUDGE